IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Robert Artis, | ) | Civil Action No.: 8:15-cv-01238-RMG-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michelle Williamson, South Carolina Department of Corrections, Bryan P. Stirling, Gregory Knowlin, | ) ) ) ) | |
| Defendants. | ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Michelle Williamson, South Carolina Department of Corrections, Bryan P. Stirling, Gregory Knowlin, | ) ) ) ) | |
| Counter Claimants, | ) ) | |
| vs. | ) ) | |
| Robert Artis, | ) ) | |
| Counter Defendant. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 56.] Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on March 12, 2015,[1] asserting an assault and battery claim. [Doc. 1.] Plaintiff, with leave of this Court, amended his Complaint on August 12, 2015, asserting an Eighth Amendment excessive use of force claim against the South Carolina Department of Corrections; Corrections Officer, Michelle Williamson ("Williamson "); South Carolina Department of Corrections Director, Defendant Bryan Stirling ("Stirling"); and Turbeville Correctional Institution Warden, Defendant Gregory Knowlin ("Knowlin") (hereinafter "Defendants"). [Doc. 40.] Plaintiff names Defendants in their official and individual capacities. [*Id.*] Defendants' Answer to the Amended Complaint set forth fifteen defenses as well as a counterclaim, asserting this case is frivolous and moving for attorney's fees and costs. [Doc. 52.] Defendants filed the instant motion for summary judgment on December 9, 2015. [Doc. 56.] On December 10, 2015, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 57.] After being granted an extension of time to respond, on March 14, 2016, Plaintiff filed a response in opposition to Defendants' motion. [Doc. 66.] Accordingly, the motion is ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on March 12, 2015 [Doc. 1-2 at 1 (envelope stamped as received by the prison mailroom on March 12, 2015)].

## BACKGROUND[2]

At the time he filed his § 1983 Complaint, Plaintiff was a state prisoner housed at the Manning Correctional Institution in Columbia, South Carolina. [Doc. 1.] He has since been released. [*See* Doc. 49 (Plaintiff's notice of change of address).] In his Amended Complaint, Plaintiff alleges that on May 11, 2014, while he was housed at Turbeville Correctional Institution in Turbeville, South Carolina, Williamson struck him in the genitalia during a routine pat down search as he reported to work in the cafeteria. [Doc. 40 at 2.] Specifically Plaintiff asserts that during the pat down, Williamson

> quickly brought her hands up in a chopping motion striking the plaintiff in the testicles with such force that caused pliantiff to double over and cry out in pain. The plaintiff protested and exclaimed 'you hurt me!' The defendant then ordered the plaintiff to turn back around and he exclaimed 'no! you hurt me!' The defendant then stated with an attitude "if you don't like it, then don't work in the cafeteria!, and if you come back tomorrow you'll get the same thing!

[*Id.*] Plaintiff immediately sought medical attention. [*Id.*]

Plaintiff asserts that he continues to suffer from the injury he sustained. [*Id.* at 2–3.] Plaintiff seeks a declaration that the act described by him violated his rights, as well as an injunction to stop this form of assault. [*Id.* at 4.] Further, he seeks compensatory and punitive damages, attorney's fees and costs, and such other relief as the Court deems just, proper, and equitable. [*Id.* at 5.]

---

[2] The facts included in this background section are taken directly from Plaintiff's Amended Complaint. [Doc. 40.]

3

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

5

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendants argue Plaintiff has failed to establish he is entitled to relief on his excessive force claim; Plaintiff has failed to demonstrate any physical injury; Defendants are entitled to qualified immunity; and because vicarious liability is inapplicable to § 1983 actions, any claims against Stirling and Knowlin should be dismissed as a matter of law. [Doc. 56-1 at 2–8.]

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at Turbeville Correctional Institution [*see* Doc. 49 (most recent notice of change of address, indicating Plaintiff is no longer incarcerated)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007) (finding the transfer or release of an inmate from the facility where he suffered the challenged conditions "moots his claims for injunctive and declaratory relief" pertaining to his imprisonment); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his release, *see id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[3] in a § 1983

---

[3] Defendants are entitled to immunity in their official capacities under § 1983 pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted);

8

lawsuit, *see Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**South Carolina Department of Corrections**

Next, the Court notes that to the extent Plaintiff brings his claims against the South Carolina Department of Corrections, his claims fail. It is well settled that only "persons" may act under color of state law, and, therefore, a defendant in a Section 1983 action must qualify as a "person." Inanimate objects such as buildings, facilities, and grounds cannot act under color of state law. *See Nelson v. Lexington Cty. Det. Ctr.*, No. 8:10-2988-JMC, 2011 WL 2066551 (D.S.C. May 26, 2011) (finding that a building, detention center, is not amenable to suit under § 1983); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Here, the South Carolina Department of Corrections is a department, group of buildings, or a facility. Thus, it is not considered a person subject to suit under 42 U.S.C. § 1983, and, therefore, Plaintiff's claims against the South Carolina Department of Corrections fail.

---

*Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, Plaintiff's claims against Defendants in their official capacities must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

**Supervisory Liability**

Defendants argue that Plaintiff asserts no allegations against Stirling and Knowlin, and because vicarious liability is inapplicable to § 1983 suits, Stirling and Knowlin should be dismissed as a matter of law. [Doc. 56-1 at 8.]

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To the extent Plaintiff bases his claims against Stirling and Knowlin on the theory of supervisory liability, his claims are without merit. Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).[4] A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular

---

[4] Such liability "is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care". *Shaw*, 13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

>constitutional injury suffered by the plaintiff.[5]

*Id.* (citations omitted) (footnote added). A high level of proof is required from plaintiffs asserting a supervisory liability claim. *See Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 207 (4th Cir. 2002) ("[C]ourts have appropriately required proof of multiple instances of misconduct before permitting supervisory liability to attach."). Consistent with the analysis under Rule 56 of the Federal Rules of Civil Procedure, "[t]his high level of proof cannot be satisfied at the summary judgment stage by the plaintiff's mere allegations." *Wilson v. Kittoe*, 229 F.Supp.2d 520, 537 (W.D. Va. 2002).

Here, Plaintiff has failed to establish a § 1983 claim against Stirling or Knowlin based on a theory of supervisory liability because Plaintiff has failed to establish that Stirling or Knowlin had actual or constructive knowledge of subordinates engaging in pervasive or widespread conduct that posed a risk of injury to inmates like Plaintiff. Rather, Plaintiff's claim is based on isolated incidents, which are insufficient to establish supervisory liability. *See Anderson v. Davies*, No. 3:10-2481-CMC-JRM, 2012 WL 1038663, at *2 (D.S.C. Mar.

---

[5] Stated differently,

>[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983.

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Iqbal* may have entirely abrogated supervisory liability in § 1983 actions. *See Iqbal*, 556 U.S. at 693 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely.").

11

8, 2012) ("'A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents,' nor is a '(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided.'" (internal citations omitted) (alterations in original)).  Plaintiff's Complaint alleges that Knowlin and Stirling failed to properly supervise Williamson and failed to investigate Plaintiff's assault claim. [Doc. 40 at 3.]  Plaintiff does not provide any evidence that the frisk policy procedures caused the injuries Plaintiff alleges he sustained.

Further, there is no evidence in the record of "documented widespread abuses," which are necessary to state a supervisory liability claim.  Plaintiff alleges that "it is general knowledge that prison guards sometimes use this tactic to inflict pain on male inmates for a number of reasons, not only at Turbeville but other institutions . . . " [*Id.*]  Plaintiff states that "he personally knows of at least one other inmate who has alleged he was assaulted in the same fashion." [*Id.*]  In support of his claim, Plaintiff attaches an affidavit of inmate Deloyd Hardy, stating that in 2009, while housed at Kershaw Correctional Institution,[6] he was assaulted in the same manner as alleged by Plaintiff, and that the forceful blow to the testicles resulted in the removal of a testicle.  [Doc. 40-1.]  Plaintiff further alleges, but provides no evidentiary support, that there is another inmate housed at Turbeville that was also assaulted in the same manner.  [Doc. 40 at 3.]  Plaintiff has not set forth evidence to

---

[6] The Court notes that according to Hardy's affidavit, he was housed at Kershaw Correctional Institution during the alleged allegation. [Doc. 40-1.] Consequently, Knowlin, the Warden at Turbeville Correctional Institution, would not have had actual or constructive knowledge of the alleged conduct. Accordingly, any claims against Warden Knowlin based on a theory of supervisory liability must fail. *See Shaw*, 13 F.3d at 799.

show the subordinates' conduct is widespread, or occurred on several different occasions. Therefore, Stirling and Knowlin are entitled to summary judgment on any claims brought against them under a theory of supervisory liability.

**Excessive Force Claim Against Williamson**

Defendants argue Plaintiff has failed to establish entitlement to relief on his excessive force claims, and Williamson is entitled to qualified immunity. [Doc. 56 at 6–8.]

"The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials . . . . [,] forbid[ding] 'the unnecessary and wanton infliction of pain.'" *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam)). To establish a constitutional excessive force claim, an inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component) and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294–300 (1991)). "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 239 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Meeting the subjective component is a heavy burden. *Whitley*, 475 U.S. at 321. The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant

13

injury is evident." *Hudson*, 503 U.S. at 9. Thus, courts must analyze both subjective and objective components.

For the subjective component, as stated above, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *See Whitley*, 475 U.S. 320–21. The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm:

> (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them.

*Id.* at 321 ("the *Whitley* factors"); *see also Hill*, 727 F.3d at 328 n.3 (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification"). "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir.1998) (internal quotations omitted).

Here, it is undisputed that on May 11, 2014, as Plaintiff reported to work in the cafeteria, Williamson conducted a pat down search of Plaintiff. Plaintiff alleges that during the pat down search, Williamson struck him in the groin for the purpose of causing him pain. [Doc. 40 at 2.] There is no evidence that Plaintiff resisted the pat down search. Williamson does not contend that any force beyond that inherent in a pat down search was

14

necessary. [Doc. 56-2.] Considering the first and second *Whitley* factors, based on the evidence presented [*see* Doc. 56-5], the Court finds that a question of fact remains as to whether there was sufficient need for application of force under prong one of *Whitley*. Further, a question of fact remains as to whether an unreasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*. Thus, the first two *Whitley* factors weigh in favor of Plaintiff.

With respect to the third *Whitley* factor, Plaintiff alleges the use of excessive force resulted in a testicular injury and both immediate and continuing pain. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it"); *see also Kilmartin v. Schaffer*, No. 9:12-CV-1167, 2013 WL 5929447, at *5 (N.D.N.Y. Nov. 1, 2013) (unpublished) (finding that being kicked in the groin without provocation is not, as a matter of law, a de minimus use of force for purposes of a Fourth Amendment excessive force claim). Plaintiff states he immediately sought medical assistance after the incident [*see* Doc. 40 at 2], and records indicate that Plaintiff received a testicular ultrasound and follow-up with a urologist [*see* Doc. 56-5]. Given the record presented, the Court finds the third *Whitley* factor weighs in Plaintiff's favor.

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill*, 727 F.3d at 328 n.3 (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification"). In this case, there is no allegation that

Plaintiff disobeyed orders or was disruptive. Thus, this factor weighs in Plaintiff's favor.

After consideration of the *Whitley* factors, the Court finds that the evidence, viewed in the light most favorable to Plaintiff, supports an inference of wantonness on the part of Williamson. Additionally, because of the question of fact regarding whether Williamson maliciously and sadistically used force to cause harm, a genuine issue of material fact exists concerning whether Plaintiff's Eighth Amendment rights were violated, and the undersigned recommends Defendants' motion for summary judgment be denied on Plaintiff's excessive force claim against Williamson. Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and its progeny is inappropriate as well.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. The motion should be granted, except as to Plaintiff's individual capacity claims against Defendant Williamson.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin  
United States Magistrate Judge

May 19, 2016  
Greenville, South Carolina